FILED _____ LODGED
RECEIVED _____ COPY

APR 1 2 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Gino Carlucci 12233-081
SPC, Tucson
PO Box 24549
Tucson, Arizona 85734

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Gino Carlucci,           )
        Petitioner,      )
                         )   Cause No.: CV 18-00051-TUC-RM (DTF)
vs.                      )
                         )   PETITIONERS TRAVERSE TO RESPONSE AND
J.T. Shartle,            )   REQUEST FOR EVIDENTIARY HEARING
        Respondent.      )
                         )
_____  )

COMES NOW, Gino Carlucci, Petitioner in the above named cause, who hereby submits his Traverse to Respondent's Response and Request for Evidentiary Hearing as follows:

Respondent's response is based on an un-substantiated version of events, not facts, put forth with no declarations, statements or verification, whereas Petitioner has set forth the facts in his petition accompanied by several declarations and evidence that support his position. <u>Clearly</u>, and evidentiary hearing is warranted to get to the truth of the matter. Petitioner pleads the following in a clear and concise manner to this Court to convey his position and the fact that the petition filed under 28 U.S.C. §2241 should be granted.

<u>PETITIONER DID NOT RECEIVE A FAIR AND IMPARTIAL DISCIPLINARY HEARING</u>

The United States Supreme Court has established five procedural safeguards for inmates when the loss of good conduct time credits are involved:(1) an inmate must receive written notice of the infractions at least 24 hours before the disciplinary hearing: (2) an inmate has the right to call witnesses unless it would be unduly hazardous to the institutional safety or correctional goals:

.1.

(3) an inmate is entitled to assistance in preparing and presenting a defense to the disciplinary charge: (4) an inmate is entitled to a copy of the disciplinary findings; and, :(5) an inmate has a right to have a sufficiently impartial decision maker. See Wolff v. McDonnell, 418 U.S. 539, 563-72, 94 S. Ct. 2963, 41 L.Ed. 2d 935 (1974). In addition to these requirements, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline which are set forth at 28 C.F.R. §541.1 et seq. The process is initiated when a staff member issues an incident report describing the incident and the charge committed. 28 C.F.R. §541.5(a). The report is then assigned to a staff member for investigation and the inmate is informed of his rights. 28 C.F.R. §541(b). Following investigation, the report is reviewed by the Unit Discipline Committee ("UDC"). 28 C.F.R. §541.7(a). This review ordinarily occurs within five days but may be suspended if the incident is being considered for criminal prosecution. 28 C.F.R. §541.7(c). Depending on the seriousness of the offense, the UDC may refer the report to the DHO for further review. 28 C.F.R. §541.7 (a)(3). Federal regulations regarding Ms. Jackie Ciufo, hereinafter, the "DHO", largely mirror the due process requirements of Wolff. The DHO must be an impartial decision maker that was not a victim, witness or investigator, or otherwise significantly involved in the incident. 28 C.F.R. §541.8(b). The DHO in this matter clearly was not impartial. Unlike what is stated in the response, on June 22, 2017, Petitioner met with his case manager Erick Romero, "Romero", and asked him to be Petitioner's staff representative if this matter went to a hearing, he agreed and tried to call the DHO to ask her for the evidence. See Declaration of Gino Carlucci attached hereto as Exhibit A, ¶14. On June 28, 2017, at approximately 9:00 A.M., Romero called Petitioner into his office and stated he just had a conversation with the DHO and she called Petitioner a liar. This was four hours prior to Petitioner's DHO hearing. Exhibit A, ¶16.

2.

During the hearing the DHO stated that she had conducted a thorough investigation of the matter and Petitioner was running a stock trading business that was being directed by Vernon Smith, a former inmate at Tucson SPC. Exhibit A, ¶22, 23, 24. After he hearing concluded the DHO called Romero back into the hearing room. Upon his return he stated to Petitioner that the DHO already had her mind made up and that she did an investigation with pre sentence reports and other various materials. Exhibit A, ¶25. It's clear by the actions of the DHO that she was not impartial, and in fact exhibited signs of bias by calling Petitioner a liar prior to the hearing and the fact that she already had her mind made up of Petitioner's guilt. The DHO participated in the case as an investigator by admitting to Petitioner as well as Romero during and after the disciplinary hearing. It is required that the DHO "will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. §541.8(b); Wolff, 418 U.S. at 592. These facts alone entitle Petitioner to relief. The Ninth Circuit has declared that a prison official who has participated in the case as an investigating or reviewing officer, or who has personal knowledge of the incident, "is not sufficiently impartial to preside over the hearing." Clutchette v. Procunier, 497 F.2d 809, 820 (9th Cir. 1974), modified, 510 F.2d 613, rev'd on other grounds , Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed. 2d 810 (1976); see also Wolff, 418 U.S. at 592. Petitioner was denied the right to call his witness, SIS Lieutenant VanDevender to be present at the disciplinary hearing. Exhibit A, ¶19. Romero witnessed at the hearing, prior to the hearing even starting, Petitioner asked where his witness was, the DHO stated "you did not list any witnesses" and pulled out the witness sheet and SIS Lieutenant Van

3.

Devender was listed in the witness column. The DHO said will deal with that later and proceeded with the hearing. Under <u>Wolff</u> this constitutes a due process violation that entitles Petitioner to relief. The Response states that SIS Lieutenant Van Devender gave a statement where he purportedly said "I never talked with Gino Carlucci", where is the statement or affidavit or any evidence to plead such a thing, it is the farthest from the truth of the matter that it could possibly be. Petitioner met with SIS Lieutenant VanDevender on June 16, 2017 in his office at approximately 2:30 P.M. Exhibit A, ¶12. A witness with material information was not permitted to give testimony at Petitioner's disciplinary hearing, again violating the due process safeguards provided under 28 C.F.R. §541.8(f); <u>Wolff</u> 418 U.S. at 592. ** .

<u>THERE IS NO EVIDENCE TO SUPPORT A GUILTY FINDING OF THE CHARGED INFRACTIONS</u>

In the response, the government is raising the issue that Petitioner has Aiden Smith a contact and was communicating with him, therefore a violation of circumventing the prison email system. Aiden Smith is a valid contact under Bureau of Prisons policy. See Exhibit C, Public messaging contacts policy. Petitioners friend, Vernon Smith wrote a book on how to analyze stocks and the stock market. See Exhibit D. Petitioner and Aiden Smith, to the writing of this Traverse <u>are still friends and remain email contacts</u>. Petitioner was receiving daily stock data from Aiden Smith of the daily high 50 stocks out of the wall street joural and other outlets. Petitioner never traded any stock, or directed Aiden Smith or any other person to trade any stock, nor was he running any type of business regarding stock. There is not <u>one piece of evidence</u> that would suggest that Petitioner was directing anyone to run any type of stock bussiness. Counselor Robert Wright and Lieutenant VanDevender both understood what

---

** In the declaration of Gino Carlucci Lieutenant VanDevender's name is misspelled as Vandervin.

4.

doing, just learning how to analyze stocks and both understood that Petitioner was communicating via email to Aiden Smith and did not have any problem with that. See Exhibit A, ¶9, 10, 11, 12. Prohibited act code 297 clearly states that there must be use of the mail to commit or further a high category prohibited act, the fact that the DHO stated several times during the hearing in front of Romero "that I am pretty sure that your running a business, if your not then Mr. Vernon Smith is and if so your guilty". Exhibit A, ¶23, 24. There is no evidence that Petitioner was running a business, or directing any person to trade stocks etc. SIS Technician D. Madrid wrote the incident report and stated on there several times that Petitioner was directing Aiden Smith to buy stocks, Petitioner, as well as this Court should ask... where is the evidence supporting the statements made by Ms. Madrid. The Supreme Court recognized that the revocation of good time credits comports with due process requirements if the prison's disciplinary findings are supported by "some evidence" in the record. See <u>Superintendent v. Hill</u>, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L.Ed. 2d 356 (1985). The Ninth Circuit has held that prison officials can not meet <u>Hill</u>'s "some evidence" requirement if the evidence lacks sufficient "indicia of reliability". Here, the DHO, aside her own agenda, relies on the incident report written by SIS Technician D. Madrid. Ms. Madrid put forth no evidence and is not a reliable witness, in case No. CR 14-00631-JGZ(LAB), the Judge found that Ms. D. Madrid was not a credible witness. As to the charge of receiving something of value from another inmate, violation code 328, Aiden Smith is Petitioner's friend, he is not an inmate with any institution or agency and meets the requirement to communicate with Petitioner as one of his contacts. Petitioner wrote a letter to Aiden Smith and asked him if he could help him out financially in any capacity to help Petitioner cover the costs of printing material, Mr.

Smith in turn deposited $40.00 on Petitioners trust fund account. There is no violation of code 328 by him doing so. Aiden Smith and Petitioner to this day are still friends, again he is not an inmate and if Petitioner asks him from time to time if he can help him out financially, that does not constitute a violation of Bureau of Prisons Code 328, accepting something of value from another inmate.

<u>AN EVIDENTIARY HEARING IS WARRANTED</u>

The fact that the Government is making statements and presenting them as facts with no supporting affidavits or documentation warrants an evidentiary hearing. If the Court can not reach a decision on the pleadings then a hearing should be held and the testimony of Erick Romero, Robert Wright and Lieutenant VanDevender should be taken by this Court in order to reach the truth of the matter.

Based on the foregoing, Petitioner prays that this Court will grant his Petition under 28 U.S.C. §2241 and restore his good time credits and order the purpoted violations stricken from Petitioners record, or in the alternative set this matter for an evidentiary hearing.

Respectfully submitted this 9th day of April, 2018.

Gino Carlucci 12233-081
SPC, Tucson
PO Box 24549
Tucson, Arizona 85734

6.

CERTIFICATE OF SERVICE

The foregoing was mailed by U.S. prepaid mail to the following on this 9th day of April, 2018:

Denise Ann Faulk
U.S. Attorneys Office
405 West Congress, Suite 4800
Tucson, Arizona 85701

By: _____
    Gino Carlucci

7.

**EXHIBIT A**

## DECLARATION OF GINO CARLUCCI

The following Declaration is by the hand of Gino Carlucci, who has first hand knowledge of the facts herein and declares they are true and factual to the best of his knowledge and belief under the pains and penalties of perjury. Declarant states the following:

1. Mr. Vernon Smith wrote a book titled Make Me Financially Free and for the last several months he was teaching me the theory behind his book which is how to track and evaluate the stock market;

2. Everyday at the close of the stock market, Mr. Smith would receive a report on the daily gainers and 52 week high and low for certain stocks, hereinafter referred to as the "Data";

3. Approximately the end of March, 2017, Mr. Smith was unable to receive the Data, so I added his son, Aiden Smith, "Aiden" to my trulincs account and made him an authorized contact;

4. Over the next several weeks, Aiden would send me the Data on a daily basis, four to five days a week;

5. On June 15, 2017, at approximately 6:00 P.M., I was called to the Lieutenants office and given an incident report written by SIS Tech D. Madrid, that charged me with three prohibited act codes accusing me and Mr. Smith of conducting a business, directing Aiden to buy and sell multiple stocks;

6. I have never sent or was instructed to send any email in any capacity that instructed Aiden, or any other person to buy or sell any stocks;

7. Mr. Smith has never used my email to instruct any person whatsoever, nor has he ever instructed me to send any emails to anyone instructing them to buy or sell stocks;

9. On June 16, 2017, I met with Counselor R. Wright, who was my UDC officer, Mr. Wright stated that he reviewed the evidence and did not see any violation of prohibited act code's 296, 328 and 334;

10. I explained what I was doing to him and that I was speaking with Mr. Smith's son, Aiden, and that Aiden was sending me the Data so I could continue learning from Mr. Smith;

11. Counselor R. Wright stated that he did not have a problem with what I was doing, nor, to his knowledge was it any type of violation so I continued to receive the requested Data from Aiden on a daily basis;

1.

12. On June 16, 2017, I met with SIS Lieutenant Vandervin and Lieutenant Tinadello and explained in detail what I was doing and the Data I was receiving from Aiden. SIS Lieutenant Vandervin stated that he could see where the Data was confusing and that he could see where SIS Tech D. Madrid may have assumed that the Data was actual stock transactions because it is just a bunch on ticker symbols;

13. SIS Lieutenant Vandervin said he would talk to SIS Tech D. Madrid and stated that he did not have a problem with me continuing to receive the Data, so I continued to receive the Data from Aiden;

14. On June 22, 2017, I spoke with my Case Manager, Mr. Romero and asked him to be my staff representative if this matter proceeded, he agreed and tried to call the DHO, Ms. Ciufo to ask her for the evidence, she was not in;

15. On Monday June 26, 2017, I was called into the camp conference room where I was met by DHO Ms. Ciufo who was going to have a hearing, I explained that I wanted SIS Lieutenant Vandervin as a witness and Mr. Romero as my staff representative, she said ok and rescheduled the hearing for Wednesday, June 28, 2017 at 2:00 P.M.;

16. On June 28, 2017 at approximately 9:00 A.M., I spoke with Mr. Romero, he said he had a conversation with DHO Ms. Ciufo and stated that she called me a liar and was upset with me, I had no idea why;

17. On June 28, 2017 at approximately 9:30 A.M. I went to see Lieutenant Vandervin to see why this matter was not taken care of, I believed that it was already. Lieutenant Vandervin was not in so I spoke with SIS Officer A. Gallion who was familiar with the situation and that he would speak to the DHO, Ms. Ciufo;

18. SIS Officer A. Gallion stated that he knew I was not guilty of what I was charged with and he would try and talk with the DHO Officer;

19. On June 28, 2017 at 2:00 P.M. the DHO, Ms. Ciufo went forward with the disciplinary hearing against me, Mr. Romero was present at the hearing and I was denied my right to have Lieutenant Vandervin present as a witness;

20. DHO Ms. Ciufo would not allow me to see the evidence against me, I explained to her what I was doing and the fact that the SIS Lieutenant, Vandervin, my Counselor, Mr. R. Wright, SIS Officer A. Gallion all said I was doing nothing wrong;

21. DHO Ms. Ciufo allowed my staff representative to see the evidence and I asked him in the hearing as an expert since he is a case manager, was there anything in the evidence that you reviewed that would in anyway remotely give you the idea that I was conducting a business or instructing anyone to buy or sell stocks? Mr. Romero stated to the DHO, no I don't see anything of that nature;

22. DHO Ms. Ciufo stated that I was running a business and that Mr. Smith was running a business through me, I asked her what proof of this is there, she said that she assumes that this is occurring and went on to find me guilty of prohibited act codes 296 and 328;

2.

23. I further asked Ms. Ciufo how can I be guilty of something that I was told was okay by the Lieutenants and other members of the staff and in fact they knew that I was communicated and receiving Data from Aiden and that it was ok?;

24. DHO Ms. Ciufo stated, I believe that Mr. Smith is running a business through you and you can't do that, so you are guilty;

25. After the hearing, Mr. Romero said she already had her mind made up and that she did an investigation with pre-sentences reports and other various materials;

26. I have never received any money from running any kind of stock business or have I ever instructed Aiden or anyone else to buy or sell stocks on mine or anyone's behalf. All I did was receive Data from Aiden so I could learn from his father.

**FURTHER DECLARANT SAYETH NAUGHT**

_____
Gino Carlucci, Declarant

### VERIFICATION

The foregoing Declaration is by the hand of Gino Carlucci and given under the pains and penalties of perjury that the facts contained therein are true and factual to the best of his knowledge and belief pursuant to 28 U.S.C. §1746 on this 30th day of June, 2017.

_____
Gino Carlucci, Declarant

3.

**EXHIBIT B**

## DECLARATION OF VERNON SMITH

The following Declaration is by the hand of Vernon Smith, who has first hand knowledge of the facts herein and declares them to be true and factual to the best of his knowledge and belief under the pains and penalties of perjury. Declarant states the following:

1. I wrote a book titled Make Me Financially Free;

2. I was teaching Mr. Gino Carlucci and a few others the premise behind my book, which is to learn to track and evaluate stocks in the stock market;

3. I was aware that Mr. Carlucci added my son, Aiden, to his email contacts as an authorized contact so Mr. Carlucci could receive the materials necessary in learning the process of tracking and evaluating stocks;

4. I have never sat at Mr. Carlucci's email terminal and used his email account, nor have I ever instructed anyone, including my son, Aiden, to buy or sell any stocks through Mr. Carlucci's account;

5. I have never instructed my son, Aiden, to send any money to Mr. Carlucci or any other person, I know Mr. Carlucci wrote Aiden a letter and asked him if he could help out with the costs of the copies of the study materials and that was not under my direction;

6. I have never directed anyone in any capacity to run any type of business through Mr. Carlucci.

**FURTHER DECLARANT SAYETH NAUGHT**

_____
Vernon Smith, Declarant

## VERIFICATION

The foregoing Declaration is by the hand of Vernon Smith and given under the pains and penalties of perjury that the facts contained herein are true and factual to the best of his knowledge and belief pursuant to 28 U.S.C. §1746 on this 3rd day of July, 2017.

_____
Vernon Smith, Declarant

1.

**EXHIBIT C**

**Public Messaging Contacts.** Inmates request to exchange emails with a person in the community by creating a contact with an email address. Ordinarily, inmates are limited to having 30 active messaging contacts on their list.

Inmates may only exchange emails with **contacts** who have accepted the inmate's request to communicate. Inmates may not exchange emails with any **unauthorized contacts** including, but not limited to, victims, witnesses, other persons connected with the inmate's criminal history, law enforcement officers, contractors, vendors who make deliveries of physical goods to the institution (e.g., Commissary, Food Service), and/or volunteers.

**Note:** Inmates may place attorneys, "special mail" recipients, or other legal representatives on their public email contact list, with the acknowledgment that public emails exchanged with such individuals will not be treated as privileged communications and will be subject to monitoring.

proj

1

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12233081

**EXHIBIT D**



> We either make ourselves miserable or we make ourselves strong. The amount of work is the same.
>
> — Carlos Castaneda

ID: 14901798
www.lulu.com

5 800104 355541



V Smith

Make Me Financially Free