**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gino Carlucci,<br><br>    Petitioner,<br><br>v.<br><br>JT Shartle,<br><br>    Respondent. | No. CV-18-00051-TUC-RM<br><br>**ORDER** |

On January 29, 2018, Petitioner Gino Carlucci, a federal inmate at the United States Penitentiary in Tucson, Arizona, filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 1.) On February 6, 2018, the Court ordered Respondent JT Shartle[1] to answer and referred this matter to Magistrate Judge D. Thomas Ferraro for further proceedings. (Doc. 3.) On January 2, 2019, Judge Ferraro issued a Report and Recommendation, recommending that the Petition be denied. (Doc. 14.) Petitioner filed Objections, to which Respondent has responded. (Docs. 15, 20.) For the reasons stated below, the Report and Recommendation will be adopted.

**I.    Factual and Procedural History**

    **A.    Background**

On June 13, 2017, Special Investigative Services ("SIS") Technician D. Madrid prepared and signed an Incident Report charging Petitioner with violation of Prohibited

---

[1] Warden B. von Blanckensee is the Complex Warden at the Federal Correctional Complex in Tucson, Arizona and will thus be substituted as Respondent in place of JT Shartle.

Act Codes 296, 328, and 334, which prohibit, respectively, "[u]se of the mail for abuses other than criminal activity which circumvent mail monitoring procedures," "[g]iving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization," and "[c]onducting a business." (Doc. 11-2 at 16); 28 C.F.R. § 541.3 (Table 1). According to the Incident Report, Technician Madrid was reviewing inmate emails when she noticed that Petitioner's email account was being used to communicate with A.S. (Doc. 11-2 at 16.) A.S. is the son of Petitioner's then-cellmate, V.S. (*Id.*) V.S. was prohibited from emailing A.S. because he had been caught directing A.S. to buy and sell stocks. (*Id.*)

Further review of Petitioner's emails revealed that V.S. was using Petitioner's email account to communicate with A.S. (*Id.*) One email from A.S. on June 2, 2017, stated that A.S. would visit on the coming Sunday. (*Id.*) A.S. visited V.S. the following Sunday. (*Id.*) Petitioner received no visitors that Sunday and had not received visitors in months. (*Id.*) A second, outgoing email directed A.S. to deposit money into Petitioner's financial account. (*Id.*) One week later, A.S. deposited $40 into Petitioner's financial account. (*Id.*)

Lieutenant D. Eastwood advised Petitioner of his rights and gave him a copy of the Incident Report. (*Id.* at 17.) Petitioner told Lieutenant Eastwood, "That's not what happened." (*Id.*) Lieutenant Eastwood determined that the Incident Report contained the correct charges and forwarded it to the Unit Discipline Committee ("UDC") and Discipline Hearing Officer ("DHO") for further review. (*Id.*)

Petitioner appeared before the UDC on June 14, 2017. (*Id.* at 16.) At that time, Petitioner gave the following statement: "My bunkie is teaching me stocks. I get the data from his son. I've passed a message from his dad and that's it. I never paid him anything nor has he paid me." (*Id.*) The UDC referred the matter to the DHO and provided Petitioner with a Notice of Discipline Hearing and a Notice of Inmate Rights at Discipline Hearing. (*Id.* at 14–16.) Petitioner signed the Notice of Discipline Hearing, initially indicating that he did not want a staff representative or to call any witnesses. (*Id.* at 14.) The Notice of Discipline Hearing was updated on June 27, 2017, to reflect that Petitioner

wanted to call SIS Lieutenant VanDevender as a witness. (*Id.*)

Petitioner appeared before DHO J. Ciufo on June 28, 2017. (*Id.* at 10.) A staff representative appeared on Petitioner's behalf and gave the following statement: "The only financial transaction I saw was for $40.00 going on his account. I did not see anything in furtherance of another high prohibited act." (*Id.*) DHO Ciufo recorded Petitioner's past statements (i.e., "That's not what happened," and "My bunkie is teaching me . . . .") and took the following additional statement:

> I put [V.S.'s] son on my account so he can teach me how to learn stock & trade. Everyday I get the list from [A.S.] and review it. I did ask him to put money on my account. The Captain and Lieutenant Van Devender [sic] said I could email him as long as I wasn't conducting a business.

(*Id.*)

DHO Ciufo obtained the following statement from Lieutenant VanDevender, who was unavailable to attend the hearing: "I never told inmate Carulucci [sic] anything." (*Id.* at 11.) After considering the Incident Report, the investigation, and the TRUVIEW documents (which show the content of the emails, among other things), DHO Ciufo found that Petitioner committed Prohibited Act Codes 296 and 328 but not Prohibited Act Code 334. (*Id.* at 11–12.) As a result, Petitioner lost 27 days of good-time credit and 6 months of email privileges. (*Id.* at 12.)

### B. The Habeas Petition

In Ground One of the Petition, Petitioner alleges that there is no evidence to support finding that he violated Prohibited Act Code 296 and 326. He alleges that he was merely learning to trade stocks, both by taking a class taught by V.S. and by having A.S. email the "daily gainers." Petitioner alleges that he asked A.S. to send $40 solely to cover the daily printing fees and asserts that he has never traded a stock from prison.

In Ground Two, Petitioner alleges that DHO Ciufo was not impartial. Petitioner asserts that, prior to the disciplinary hearing, DHO Ciufo investigated the case and called Petitioner a "liar." According to Petitioner, his staff representative, Erick Romero, told him after the hearing that DHO Ciufo had prejudged him guilty and that there was nothing he could have done.

In Ground Three, Petitioner alleges that he was not afforded an opportunity to call any witnesses or view the evidence against him. According to Petitioner, Lieutenant VanDevender would have clarified during the disciplinary hearing that Petitioner did nothing wrong. Petitioner alleges that DHO Ciufo stated that she would get to Petitioner's witnesses but never did, and that she refused to let Petitioner see the evidence against him, though she did let Romero review it.

Respondent argues that the Petition should be denied in its entirety. As to Ground One, Respondent emphasizes that there need only be "some evidence" supporting prison officials' findings. According to Respondent, this low standard is easily met in this case because Petitioner admitted to passing a message from V.S. to A.S. (in violation of Prohibited Act Code 296) and to asking for and receiving money from A.S. (in violation of Prohibited Act Code 326).

As to Ground Two, Respondent argues that DHO Ciufo was "impartial" as that term is defined in 28 C.F.R. § 541.8(b); that is, she was not "a victim, witness, investigator, or otherwise significantly involved in the incident." Respondent also highlights that the discipline record shows DHO Ciufo relied solely on the evidence collected by other prison officials.

As to Ground Three, Respondent points to a federal regulation that allows the DHO to obtain a written statement from unavailable witnesses, *see* 28 C.F.R. § 541.8(f), which is what occurred with Lieutenant VanDevender. As for Petitioner not being able to review the evidence against him, Respondents state that he had no right to review the evidence and, regardless, his staff representative reviewed the evidence and made a statement on his behalf.

**C.     Report & Recommendation**

Judge Ferraro issued the Report and Recommendation on January 2, 2019, finding that Petitioner is not entitled to habeas relief on any of the grounds raised. (Doc. 14.) With respect to Ground One, Judge Ferraro found that Petitioner's admissions were "some evidence" supporting a finding that Petitioner violated Prohibited Act Codes 296 and 328.

With respect to Ground Two, Judge Ferraro found that the disciplinary record establishes that Lieutenant Eastwood—not DHO Ciufo—was the investigator and that the record does not support Petitioner's assertion that DHO Ciufo relied on evidence outside the record. Finally, as to Ground Three, Judge Ferraro found that Petitioner's rights were not violated, since Lieutenant VanDevender was an unavailable adverse witness and because Petitioner had no right to view the evidence against him.

On January 14, 2019, Petitioner filed Objections to the Report and Recommendation. (Doc. 15.) He objects to Judge Ferraro's finding that there is "some evidence" that he violated Prohibited Act Codes 296 and 328. Petitioner says that a violation of Code 296 requires "use of the mail to commit or further a High category prohibited act," and there is no evidence that he was involved in some other "High category prohibited act." As to Code 328, Petitioner argues that accepting money from an approved contact and friend is not a violation. As to Ground Two, Petitioner argues that Judge Ferraro is minimizing DHO Ciufo's role as an investigator in his case. He points to his sworn declaration that DHO Ciufo called his staff representative and admitted investigating the case. Finally, as to Ground Three, Petitioner disputes that Lieutenant VanDevender ever made an adverse statement. He contends that DHO Ciufo forgot to inform Lieutenant VanDevender of the hearing date and time and suggests that the later-obtained statement was actually fabricated by DHO Ciufo.

## II. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## III. Discussion[2]

### A. Ground One

Petitioner alleges in Ground One that there is no evidence to support the DHO's finding that he violated Prohibited Act Codes 296 and 328. "[P]rison disciplinary

---

[2] Respondent concedes that Petitioner exhausted his administrative remedies.

convictions must be supported by 'some evidence' in order to satisfy procedural due process." *Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1999). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985).

There is "some evidence" that Petitioner violated Prohibited Act Code 296, which prohibits "[u]se of the mail for abuses other than criminal activity which circumvent mail monitoring procedures." 28 C.F.R. § 541.3 (Table 1). The Code provides several examples of how to commit this violation, including "sending mail for other inmates without authorization." *Id.* Petitioner admitted that he used his email account to pass a message from V.S. to A.S. (Doc. 11-2 at 10, 16 ("I've passed a message from his dad and that's it.").) Furthermore, two messages from Petitioner's email account were signed, respectively, "Love ya very much, Dad" and "Thanks and love ya. Dad," although Petitioner is not A.S.'s father. (*Id.* at 32–33.) In another exchange, A.S. stated he would try to visit on the coming Sunday. (*Id.* at 16.) A.S. visited V.S. on that Sunday, while Petitioner received no visitors. (*Id.*) Given that V.S. was prohibited from emailing A.S., such use of Petitioner's email account was in circumvention of the prison's mail monitoring procedures.

Judge Ferraro reached the same conclusion after the same straightforward analysis. Petitioner objects, saying that there is no evidence that he used mail to "commit or further a High category prohibited act." His objection reflects a misunderstanding of the offense. There are several ways to violate Prohibited Act Code 296. Using mail to "commit or further a High category prohibited act" is one, and "sending mail for other inmates without authorization" is another. *See* 28 C.F.R. § 541.3 (Table 1). There clearly is "some evidence" that Petitioner did the latter. Petitioner's objection will be overruled.

There is also "some evidence" that Petitioner violated Prohibited Act Code 328,

which prohibits "[g]iving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization." *Id.* Petitioner admits in the Petition that he asked for and received $40 from A.S., with whom, as the evidence shows, he was circumventing mail monitoring procedures. (Doc. 1 at 4; *see* Doc. 11-2 at 19 (record of deposit).) Whether or not the $40 was to pay for printing fees has no bearing on whether Petitioner committed the prohibited act. Again, Judge Ferraro made the same finding, to which Petitioner objects. He argues that the receipt of $40 from A.S. is not a prohibited act. As explained above, it is. Petitioner's objection will be overruled.

## B. Ground Two

Petitioner alleges in Ground Two that DHO Ciufo was not impartial because she investigated his case and prejudged him a "liar." Federal regulations require the DHO to be "an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Respondents and Judge Ferraro focus on the disciplinary record, which states that only Lieutenant Eastwood investigated the case. (*See* Doc. 11-2 at 17.) They also conclude that Petitioner is not entitled to habeas relief because DHO Ciufo called him a "liar," since any such statement was based on "an attitude of disapproval" based on "known conduct," rather than "active and deep-rooted" animus. Petitioner objects, arguing that his sworn declaration that DHO Ciufo investigated his case is evidence that creates a factual dispute warranting a hearing.

The Court finds that, even if DHO Ciufo investigated Petitioner's case, that procedural defect was harmless. As explained above, not only is there documentary evidence showing that Petitioner committed both prohibited acts, but Petitioner also admitted to the conduct underlying both violations. The evidence against Petitioner far exceeds the "some evidence" standard. Petitioner thus cannot show "that the outcome of the DHO disciplinary proceedings would have been different if he had been afforded an impartial DHO . . . ." *Nielsen v. Graber*, No. CV 11–344–TUC–JGZ (BPV), 2012 WL 1520000, at *1, *5 (D. Ariz. Mar. 16, 2012) (finding DHO's investigatory conduct

harmless where petitioner admitted the violations and collecting cases applying harmless-error analysis to prison disciplinary proceedings), *report and recommendation adopted by* 2012 WL 1530325 (May 1, 2012); *see also Velasquez v. Benov*, 518 F. App'x 555, 556 (9th Cir. 2013) (finding procedural defect harmless where petitioner admitted violation).

### C. Ground Three

In Ground Three, Petitioner alleges that he was deprived of his right to call witnesses and view the evidence against him. As explained in Ground Two, any such error was harmless. *See Graves v. Knowles*, 231 F. App'x 670, 672 (9th Cir. 2007) ("Moreover, in light of all of the other evidence against him, any error that may have resulted from [the petitioner's] inability to call [officer] Collins as a witness was harmless.").

Petitioner's claim also lacks merit. Under federal regulations, if a witness requested by an inmate is unavailable to appear, the DHO or staff representative can instead request a statement from the witness. 28 C.F.R. § 541.8(f)(4). The disciplinary record shows that the DHO obtained Lieutenant VanDevender's statement the day before the hearing because he was unavailable to appear. (Doc. 11-2 at 11, 14.) Furthermore, although prisoners facing disciplinary proceedings have a right to call witnesses, they have no right to confront and cross-examine adverse witnesses. *Wolff v. McDonnell*, 418 U.S. 539, 566–68 (1974). Thus, the DHO need not call an adverse witness if the witness's statement is adequately summarized in the investigation materials. 28 C.F.R. § 541.8(f)(2). Lieutenant VanDevender unequivocally denied telling Petitioner that his conduct was permissible: "I never told inmate Carulucci [sic] anything." (Doc. 11-2 at 11, 14.) Whether or not Petitioner called him, Lieutenant VanDevender was an adverse witness who was not required to appear.

Petitioner also complains that he was denied his right to view the evidence against him. The Supreme Court has never articulated such a right. *See Wolff*, 418 U.S at 563–72 (determining that inmates have a right to notice and a conditional right to call witnesses and present documentary evidence but no right to cross-examination or to counsel). Moreover, Petitioner acknowledges that his staff representative viewed the evidence on his

behalf. (Doc. 1 at 6.) This fact, in addition to the strong evidence that Petitioner committed the prohibited acts, makes any procedural defect harmless.

**IT IS ORDERED:**

1. Warden B. von Blanckensee is **substituted** as Respondent in place of JT Shartle.

2. Petitioner's Objections (Doc. 15) are **overruled**. The Report and Recommendation (Doc. 14) is **accepted and adopted**.

3. The Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is **denied**. The Clerk of Court is directed to close this case.

Dated this 2nd day of April, 2019.

_____
Honorable Rosemary Márquez
United States District Judge